# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD DIVISION

| | |
|---|---|
| **KENITHA L. FERGUSON,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | Civil Action No. 1:18-00394 |
| ) | |
| **JENNIFER SAAD, Acting Warden,**[1] ) | |
| ) | |
| **Respondent.** ) | |

## **PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Petitioner's Application for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241 (Document No. 1), filed on March 5, 2018; (2) Petitioner's "Motion for Declaration in Support of Entry of Default" (Document No. 17), filed on June 7, 2018; and (3) Petitioner's "Motion to Request a Mandatory Injunction Under the Irreparable Doctrine for Harm" (Document No. 20), filed on June 18, 2018. By Standing Order, this matter was referred to a United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having examined Petitioner's Section 2241 Application, the undersigned finds, and hereby respectfully recommends, that Petitioner's Section 2241 Petition (Document No. 1), Motion for Entry of Default (Document No. 17), and

---

[1] Petitioner has named the Alderson Federal Prison Camp as the Respondent. The proper Respondent, however, is the Warden of the correctional facility where the Petitioner is incarcerated. 28 U.S.C. § 2243. Therefore, the Clerk is **ORDERED** to substitute the Jennifer Saad, Acting Warden of FPC Alderson as the Respondent. The Clerk is **DIRECTED** to modify the Docket Sheet to reflect Jennifer Saad as the proper Respondent in both the style of the case, and the short style at the top of the Docket Sheet.

Motion for Mandatory Inunction (Document No. 20) be denied.

## FACT AND PROCEDURE

On March 5, 2018, Petitioner, acting *pro se* and incarcerated at FPC Alderson, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241.[2] (Document No. 1.) In her Section 2241 Petition, Petitioner complains that FPC Alderson is improperly denying her Residential Reentry Center ["RRC"] placement and refusing to provide her with adequate medical care in violation of her Eighth Amendment rights. (Id.) To the extent Petitioner was alleging inadequate medical treatment and challenging the conditions of her confinement, the undersigned considered Petitioner's above Petition as an attempt to initiate a civil action pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971), and directed the Clerk to open a new civil action and include therein a copy of Petitioner's Petition. (Document No. 4.)

On April 29, 2018, Petitioner paid the $5.00 filing fee. (Document No. 5.) On April 23, 2018, Petitioner filed her "Motion to Request to Add Case Law for Judiciary Relief Under Second Chance Act by Way of Bivens Civil Action Lawsuit to be Reviewed by the Courts" (Document No. 6), which the Court has construed as an Amendment to Petitioner's Section 2241 Petition. (Document Nos. 7 and 8.) In her Amendment, Petitioner basically contends that the Bureau of Prisons ["BOP"] is acting contrary to the Second Chance Act of 2007 by not considering inmates for designation to Residential Reentry Center ["RRC"] placement for periods of time longer than six months. (Document No. 8, pp. 1 – 4.) Petitioner contends that

---

[2] Because Petitioner is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

notwithstanding Congress' amendment of 18 U.S.C. § 3624(c) under the Second Chance Act of 2007, the BOP has implemented a policy and practice of authorizing no inmate more than a 6-month RRC placement. (Id.) Petitioner states that Congress mandated that prisoners receive individualized evaluations of their eligibility for Community Corrections Placement. (Id.) Petitioner complains that her unit team has determined that 6 months RRC placement will satisfy Petitioner's reentry needs. (Id.) Petitioner, however, states that 6 months is insufficient because she has needs medical treatment including surgeries. (Id.) Thus, Petitioner states that her circumstances are not being properly considered. (Id.) Petitioner states that she needs 5 months RRC placement and 2 months home confinement. (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of Petitioners' "Inmate Education Data Transcript" (Id., pp. 5 – 7.); (2) A copy of Warden Wilson's Response dated December 21, 2017, denying Petitioner's "Request for Administrative Remedy" (Remedy ID No. 924988-F1) regarding a furlough (Id., p. 8.); (3) A copy of Petitioner's "Female Custody Classification Form" (Id., p. 9.); (4) A copy of Regional Director Angela P. Dunbar's Response dated February 13, 2018, denying Petitioner's appeal (Remedy ID No. 924988-R1) (Id., p. 10.); (5) A copy of Petitioner's Inmate Request to Staff dated February 21, 2018 (Id., p. 11.); (6) A copy of Acting Warden Saad's Response dated March 8, 2018, denying Petitioner's "Request for Administrative Remedy" (Remedy ID No. 931894-F1) regarding her RRC placement (Id., p. 12.); (7) A copy of a letter from Attorney Steven S. Nolder dated April 5, 2018 (Id., p. 13.); (8) A copy of Petitioner's "Judgment in Criminal Case" as filed in the Southern District of Ohio (Id., p. 14.); (9) A copy of letter from the Office of Regional Director dated March 19, 2018, regarding Petitioner's RRC placement (Id., p. 16.); (10) A copy of Petitioner's "Individualized Reentry

Plan" (Id., p. 17.); (11) A copy of Petitioner's "Furlough Justification Form" dated March 20, 2018 (Id., p. 18.); and (12) A copy of Petitioner's "Sentence Monitoring Computation Data As of 04-03-2018" (Id., pp. 19 – 20.).

By Order entered on April 24, 2018, the undersigned ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 9.) On May 3, 2018, Petitioner filed the Declaration of Inmate Patricia Means in support of her Petition. (Document No. 13.)

On May 15, 2018, Respondent filed her Response to the Order to Show Cause. (Document No. 14.) Respondent argues that Petitioner's Petition should be dismissed based on the following: (1) "Petitioner failed to exhaust her administrative remedies" (Id., pp. 3 – 4.); and (2) "The BOP has fulfilled its obligation to review Petitioner for an RRC placement" (Id., pp. 4 – 7.). As Exhibits, Respondent attaches the following: (1) The Declaration of Renee Harvey (Id., pp. 9 – 10.); (2) A copy of Petitioner's "Public Information Inmate Data as of 05-03-2018" (Id., pp. 12 – 14.); (3) A copy of Petitioner's "Individualized Reentry Plan" (Id., pp. 16 – 17.); (4) A copy of Petitioner's "Inmate Assignments" (Id., p. 19.); and (5) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" (Id., pp. 21 - 36.).

By Order and Notice entered on May 16, 2018, the undersigned notified Petitioner of her right to file a Reply to Respondent's Response. (Document No. 15.) On May 24, 2018, Petitioner filed her Reply. (Document No. 16.) First, Petitioner argues that she properly exhausted her administrative remedies by submitting her BP-11. (Id.) Second, Petitioner continues to argue that BOP staff have not properly considered her individualize needs for more than 6 months RRC

placement. (Id.) As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's "Inmate Request to Staff" dated October 11, 2017 (Document No. 16-1, p. 2.); (2) A copy of letter from the Office of Regional Director dated May 1, 2018, regarding Petitioner's RRC placement (Id., p. 3.); (3) A copy of Petitioner's Administrative Remedy Form (Id., p. 4.): (4) A copy of Petitioner's "Request for Administrative Remedy" (Remedy ID No. 931894-F1) (Id., p. 5.); (5) A copy of Acting Warden Saad's Response dated March 8, 2018, denying Petitioner's "Request for Administrative Remedy" (Remedy ID No. 931894-F1); (6) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated March 19, 2018 (Id., p. 7.); (7) A copy of Regional Director Angela P. Dunbar's Response dated April 18, 2018, denying Petitioner's appeal (Remedy ID No. 931894-R1) (Id., p. 8.); (8) A copy of Petitioner's "Individualized Reentry Plan" (Id., pp. 9 - 10.); (9) A copy of Petitioner's "Request for Administrative Remedy" dated November 21, 2017, and December 14, 2017 (Id., p. 11 – 12.); (10) A copy of a letter from Trenton I. Weaver, Constituent Services and Policy Assistant to U.S. Congresswomen Joyce Beatty dated December 22, 2017 (Id., p. 13.); (11) A copy of Petitioner's "Inmate Request to Staff" dated February 21, 2018, and March 29, 2018 (Id., pp. 15 and 16.); (12) A copy of Petitioner's request for Halfway House placement dated March 20, 2018 (Id., p. 17.); (13) A copy of Petitioner's "Inmate Request to Staff" dated January 29, 2018 (Id., pp. 18 - 20.); (14) A copy of Petitioner's "Administrative Remedy Form dated January 11, 2018 (Id., p. 21.); (15) A copy of Warden Wilson's Response dated December 21, 2017, denying Petitioner's "Request for Administrative Remedy" (Remedy ID No. 924988-F1) regarding a furlough (Id., p. 22.); (16) A copy of a letter to Petitioner's defense counsel from the United States Probation Officer concerning her custodial recommendation (Id., p. 24.); (17) A copy of the Program Statement

regarding "Inmate Security Designation and Custody Classification" (Id., pp. 25 - 26.); (18) A copy of the BOP's "Institution Supplement" regarding "Release Preparation Program" (Id., pp. 27 – 28.); (19) A copy of the Memorandum dated June 24, 2010, entitled "Revised Guidance for Residential Reentry Center (RRC) Placements" (Id., pp. 29 – 31.); (20) Petitioner's Declaration in Support (Document No. 16-2, pp. 1 – 2.); (21) A Declaration from Inmate Michelle Green (Id., p. 3.); (22) A Declaration from Inmate Jessica Hensley (Id., p. 4.); (23) A Declaration from Inmate Nytia Simmons (Id., p. 5.); (24) A Declaration from Inmate Christiba Williams (Id., p. 6.); and (25) A Declaration from Inmate Gerilynn Bennett (Id., p. 7.).

On June 7, 2018, Petitioner filed a "Motion for Declaration in Support of Entry for Default." (Document No. 17.) Petitioner argues that "Defendant has not filed nor served a response or taken actions as may be permitted by law although it has been more than 8 days since the date of service." (Id.) Petitioner explains that Respondent had seven days to reply to Petitioner's Response. (Id.) On June 8, 2018, Respondent filed her "Response to Plaintiff's Motion for Default." (Document No. 18.) Respondent explains that she filed a Response to Petitioner's Petition on May 15, 2018 and Petitioner filed a Response on May 24, 2018. (Id.) Thus, Respondent contends that Petitioner's Motion for Default should be denied. (Id.)

On June 13, 2018, Petitioner filed her "Motion for Declaration in Support of Residential Reentry Center Placement." (Document No. 19.) Petitioner requests that the Court consider the following Exhibits: (1) A copy of Petitioner's "Non-Residential Drug Treatment Certification of Completion" dated May 29, 2108 (Document No. 19-1, p. 2.); (2) A copy of Program Statement 5330.11 regarding Psychology Treatment Programs (Id., pp. 3 – 9.).

On June 18, 2018, Petitioner filed her "Motion to Request a Mandatory Injunction Under

the Irreparable Doctrine of Harm." (Document No. 20, pp. 1 - 3.) Petitioner requests that the Court direct Respondent to update her custody classification status and immediately transfer Petitioner to an RRC placement. (Id.) Petitioner argues that her PSR contained erroneous information, which caused her to receive an incorrect custody classification. (Id.) Petitioner complains that BOP staff refuse to correct the error despite receipt of an Order from the sentencing court. (Id.) As Exhibits, Petitioner attaches a copy of the following: (1) A copy of a letter from the United States Probation Office dated April 16, 2018, clarifying that Petitioner received a 10-level increase, instead of a 14-level increase, as to her offense level (Id., p. 5.); (2) A copy of Petitioner's "Motion to Correct Version of Final PSR Sent to BOP" as filed in the Eastern District of Ohio (Id., pp. 6 – 7.); (3) A copy of an Order from the Eastern District of Ohio dated May 10, 2018, clarifying that Petitioner received a 10-level enhancement, not a 14-level enhancement (Id., pp. 8 – 9.); (4) A copy of Petitioner's "Request for Administrative Remedy" dated June 14, 2018, regarding her custody classification (Id., p. 10.); (5) A copy of BOP policy regarding "Custody Change Consideration" (Id., pp. 11 – 12.); (6) A copy of Petitioner's "Female Custody Classification Form" (Id., p. 13.); and (7) A copy of Petitioner's "Inmate Request to Staff" dated June 7, 2018 (Id., p. 14.).

On June 26, 2018, Respondent filed her "Response to June 18, 2018 Motion." (Document No. 22.) Respondent notes that "Petitioner filed this action seeking more time in an RRC than what was recommended by the BOP." (Id.) Respondent notes that Petitioner is now seeking "an order from the Court requiring the BOP to update her custody classification, which she believes will allow her more time in a RRC." (Id.) First, Respondent contends that Petitioner's case should be dismissed because the BOP has fulfilled its duty to consider Plaintiff or placement in

an RRC. (Id.) Next, Respondent claims that Petitioner's claim regarding her custody classification is an allegation not appropriately raised in a *habeas* case. (Id.) Respondent explains that Petitioner's custody classification claim neither challenges the fact nor duration of Petitioner's confinement. (Id.) Respondent further states that the letter from the United States Probation Office clarifying that Petitioner received a 10-level enhancement has been placed in Petitioner's Central File and will be considered upon her next review of custody classification. (Id.) Respondent, however, notes that neither the letter nor Petitioner's custody classification affects her RRC placement date. (Id.) As an Exhibit, Respondent attaches the Second Declaration of Renee Harvey. (Document No. 22-1.)

On July 2, 2018, Petitioner filed a "Motion to Add Statement." (Document No. 24.) Specifically, Petitioner requests permission to file a copy of the Order entered by the Eastern District of Ohio regarding the amendment of her PSR to reflect that Petitioner received a 10-level, instead of 14-level, offense level enhancement. (Id.) Also on July 2, 2018, Petitioner filed a "Statement of Facts Not to Dismiss Mandatory Injunction Under Irreparable Doctrine for Harm." (Document No. 25.) Specifically, Petitioner appears to argue that she is entitled to a mandatory injunction directing her immediate RRC placement "because she is not liking how her sentence is being carried out at Alderson Federal Prison Camp." (Id.)

On July 20, 2018, Petitioner filed a "Motion to Add Statement for Declaration in Support of Residential Reentry Center Placement and/or Sentence Reduction Eligibility." (Document No. 28.) Petitioner states that she has now completed the Non-Residential Drug Abuse Program. (Id.) Petitioner states that BOP Program Statement P5330.11 provides that if an inmate completes this program, an inmate can get the maximum period of RRC placement. (Id.)

8

## ANALYSIS

**1.     Motion for Default:**

In her "Motion for Declaration in Support of Entry for Default," Petitioner argues that "Defendant has not filed nor served a response or taken actions as may be permitted by law although it has been more than 8 days since the date of service." (Document No. 17.) Petitioner explains that Respondent had seven days to reply to Petitioner's Response. (Id.)

Rule 55(a) of the Federal Rules of Civil Procedure permits the entry of default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . .." Respondent entered a pleading in this case by filing her "Response to Order to Show Cause" on May 15, 2018. (Document No. 14.) By "Order and Notice" entered on May 16, 2018, the undersigned directed that Petitioner could file her Response to Respondent's request for dismissal as set forth in the "Response to Order to Show Cause" by June 25, 2018, and Respondent could file a Reply within 7 business days of service of Petitioner's Response. (Document No. 15.) Although the Court provided a deadline for Respondent to file a Reply to Petitioner's Response, the Court did not mandate the filing of a Reply by Respondent. (Document No. 15.) Accordingly, there is no basis for the entry of default judgment under Rule 55(a), and Petitioner's Motion for Default (Document No. 17) should be denied.

**2.     Failure to Exhaust:**

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001));

9

Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate

Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Respondent argues that Petitioner's Section 2241 Petition should be denied because Petitioner did not exhaust her administrative remedies. (Document No. 14, p. 4.) Respondent acknowledges that Petitioner filed on February 20, 2018, an administrative remedy request (Administrative Remedy ID No. 931894-F1) seeking additional time in an RRC.[3] (Id.) Respondent, however, notes that Petitioner filed her instant Section 2241 Petition with the Court on March 5, 2018, prior to receiving a the Warden's Response to the remedy. (Id.) Respondent

---

[3] The undersigned notes that Administrative Remedy ID No. 924988 involves Petitioner's request for a furlough. (Document No. 6, pp. 8 and 10.)

11

acknowledges that Petitioner filed an appeal with the Regional Office on April 3, 2018, and the appeal was denied on April 18, 2018. (Id.) Respondent asserts that Petitioner did not appeal that denial to the Central Office. (Id.) In Reply, Petitioner appears to acknowledge that she instituted the above action prior to fully exhausting her administrative remedies. (Document No. 16.) Petitioner, however, explains that she has now fully exhausted her administrative remedies. (Id., p. 2.) Petitioner further states that she did file an appeal to the Central Office, but she never received a response. (Id.) Finally, Petitioner appears to state that she should be excused from the exhaustion requirement based upon irreparable harm. (Id.) Petitioner appears to argue that requiring her to fully exhaust her administrative remedies prior to filing suit would cause irreparable harm because Petitioner is eligible for immediate RRC placement. (Id.)

      The record reveals that although Petitioner began the administrative process, Petitioner failed to fully exhaust her remedies *prior* to instituting this action. Specifically, Petitioner filed her administrative remedy request regarding her RRC placement on February 20, 2018. Approximately 15 days later and prior to receiving the Warden's Response to the remedy, Petitioner filed her instant Section 2241 Petition (March 5, 2018). (Document No. 6, p. 12.) Although Petitioner states that she continued the process and fully exhausted her remedies since the filing of her Petition, such is immaterial. Petitioner must fully exhaust her remedies *prior* to filing an action. Next, Petitioner appears to contend that she should be excused from exhausting her administrative remedies because requiring her to exhaust would result in "irreparable harm." Petitioner explains that she is entitled to immediate RRC placement and requiring her to fully exhaustion would delay that placement. It is well recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear,

however, that exhaustion should not be excused simply because an inmate believes that the length of the exhaustion process will prevent the inmate from receiving a full RRC placement. See Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy)(finding that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark"); also see Yannucci v. Stansberry, 2009 WL 2421546, * 3 (E.D.Va. Jul. 28, 2009)(slip copy)(finding that inmate's claim that "he ran out of time to complete the administrative exhaustion process prior to filing his petition is not a sufficient excuse for failing to exhaust his [RRC] claims"); and Garrison v. Stansberry, 2009 WL 1160115, * 3 (E.D.Va. Apr. 29, 2009)(slip copy)(explaining that granting review of RRC placement claims because of "time-sensitivity" would encourage the filing of similar petitions before the administrative remedy process has run its course, which would "both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims"). Based on the foregoing, the undersigned finds that Petitioner is not excused from exhausting her administrative remedies and her Petition should be dismissed.

Since the filing of her Section 2241 Petition, Petitioner has filed multiple documents setting forth "statements" in support of Section 2241 Petition. In these documents, Petitioner appears to set forth additional claims. First, Petitioner states that she has now received documentation from the sentencing court that would support a reduction in her custody classification.[4] Second, Petitioner contends that she has now completed the Residential Drug

---

[4] In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the inmate is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). The Court finds that Petitioner claim based upon her alleged improper

Abuse Program ("RDAP") and BOP staff are improperly denying her a sentence reduction pursuant to 18 U.S.C. § 3621. The undersigned notes that these are clearly new, unexhausted claims that occurred subsequent to the filing of the above Petition. For the same reasons stated above, the undersigned finds that Petitioner is not excused from exhausting her administrative remedies based upon futility or irreparable harm.

**3.      Application of 18 U.S.C. §§ 3621(b) and 3624(c).**

Disregarding Petitioner's failure to exhaust administrative remedies, it is clear that her Petition must be dismissed because it is evident that the BOP considered how much time she should be designated to RRC placement on an individualized basis and considered Section 3621(b)'s five factors.

Pursuant to Title 18 U.S.C. § 3621, the BOP has authority to designate a prisoner's place of imprisonment. Section 3621(b) provides five factors to be considered by the BOP in

---

custody classification is not cognizable under Section 2241 because she is challenging the conditions of her confinement. A Section 2241 petition is used to attack the manner in which a sentence is executed, e.g., time credit calculations. Thus, a Section 2241 petition is appropriate where the prisoner challenges the fact or length of her confinement, but generally not the conditions of that confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 499-500 (1973); *Ajaj v. Smith*, 108 Fed.Appx. 743, 744 (4th Cir. 2004). "If a prisoner seeks a 'quantum change' in his level of custody such as freedom, his remedy is habeas corpus." *Campbell v. Deboo*, 2011 WL 1694454, * 2 (N.D.W.Va. May 4, 2011). If a prisoner, however, "seeks a different program, location, or environment, his challenge is to the condition of his confinement rather than the fact of his confinement and his remedy is under civil rights law." *Id.; also see Biedrzycki v. O'Brien*, 2011 WL 6748505 (N.D.W.Va. Oct. 14, 2011)(dismissing petitioner's Section 2241 claim where petitioner was "merely challenging the B.O.P.'s reliance on information in his PSR that was used to determine his custody classification and security level, neither of which affect the duration of his sentence"). In the instant case, Petitioner argues that her custody classification is improperly calculated based upon inaccurate information contained in her Presentence Report. Thus, Petitioner appears complains that the erroneous classification has had adverse effects upon her custody level, housing, and programming. In her Second Declaration, Ms. Harvey states that Petitioner's custody classification has no effect on Petitioner's RRC placement date. (Document No. 22-1.)

determining a prisoner's placement:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Title 18 U.S.C. § 3624(c) provides that a prisoner may be granted pre-release custody allowing a prisoner to serve a portion of her sentence in the community, such as home confinement, placement in a community correctional facility, or RRC. See 18 U.S.C. § 3624. Section 3624(c)(1) governs pre-release placements. As amend by the Second Chance Act of 2007, Section 3624(c) provides as follows:

> **(1) In general.** - - The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> **(2) Home confinement authority.** - - The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

The Second Chance Act required that the BOP issue new regulations designed to ensure that prerelease placements are "(A) conducted in a manner consistent with section 3621(b) of this

title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). In compliance with the above, the BOP adopted regulations set forth in 28 C.F.R. § 570.20 - .22. Section 570.21 provides that a prisoner's maximum allowable time in a RRC placement is 12 months. See 28 C.F.R. § 570.21. Section 520.21 further provides that a prisoner's maximum allowable time in home confinement is "the shorter of ten percent of the inmate's term of imprisonment or six months." Id. The regulations, however, do not set any minimum amount of time that a prisoner must spend at a RRC placement or home confinement. Section 520.22 requires the BOP to make pre-release community confinement decisions "on an individual basis" and to allow placement "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." See 28 C.F.R. § 570.22. Furthermore, the 12-month period is a statutory maximum and it is not mandatory that prisoners receive 12-months pre-release placement. See 18 U.S.C. § 3624(c); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 251 (4th Cir. 2005)(stating that "the BOP may assign a prisoner to [a RRC placement] does not mean that it must").

Based upon a review of the record, the undersigned finds that Petitioner has appropriately been considered for pre-release placement pursuant to Section 3621(b). During the Program Review, the Unit Team reviewed Petitioner's progress and considered Petitioner's placement in an RRC and home confinement. Specifically, the Unit Team determined that a range between 121 to 151 days RRC placement would satisfy Petitioner's release needs, and was of sufficient duration to provide the greatest likelihood of successful reintegration into the community.[5]

---

[5] In considering the five factors, the Unit Team considered the following factors: (1) secure housing; (2) public transportation access; (3) employment skills (amazon/cleaning services); (40 No J&C statement; and (5) no policy applied. (Document No. 14, pp. 10, 16 – 17.) The record

(Document No. 13, pp. 18 - 20.) Section 3621(b) only requires that Petitioner receive an individualized assessment for pre-release placement using the factors set forth in the statute. See Syrek v. Phillips, 2008 WL 4335494 (N.D.W.Va. Sep. 17, 2008)(finding that "the BOP must consider the § 3621(b) statutory factors" and "cannot rely upon a categorical formula to determine the length of an inmate's CCC placement"); also see Specter v. Director Federal Bureau of Prisons, 2010 WL 883733, * 5 (D.S.C. Mar. 5, 2010)(slip copy)(stating that "[u]nder these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on § 3621(b) factors"); Garrison v. Stansberry, 2009 WL 1160115, *5 (E.D.Va. April 29, 2009)(finding that "the Court lacks the authority to direct the BOP to consider specific characteristics for each prisoner who is reviewed for RRC placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis"). Therefore, the undersigned finds that the BOP appropriately considered Petitioner for pre-release placement pursuant to Section 3621(b).[6] Based upon the foregoing, the undersigned further finds that Petitioner's Motion for Mandatory Injunction (Document No. 20) should be denied.

---

reveals that Petitioner was scheduled for RRC placement in July 2018. On March 30, 2018, however, Petitioner lost 27 days of Good Conduct Time based upon a finding that she committed Phone Abuse in violation of Prohibited Act Code 297. (*Id.*, p. 10.) Thus, Petitioner's RRC date changed to September 13, 2018. Petitioner now appears to complain that her RRC has changed to November 2018, due to a lack of beds at the RRC. The undersigned, however, finds that such is an appropriate consideration by the BOP. *See Hill v. Hendrix*, 2018 WL 1995524 (N.D.W.Va. April 27, 2018)(finding that the BOP acted appropriately when petitioner's "RRC placement was reduced and subsequently eliminated based upon the statutory mandated factors that the BOP is required to consider when determining where to incarcerate an inmate, including the resources of the prospective incarceration facility (RRC bed space availability) and the history and characteristics of the prisoner (Hill's recent disciplinary infraction)").

[6] The Court further finds that Petitioner does not possess a constitutionally protected interest in placement in a RRC or on home confinement. The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any

**PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Petition for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241(Document No. 1), Petitioner's "Motion for Declaration in Support of Entry of Default" (Document No. 17), and "Motion to Request a Mandatory Injunction Under the Irreparable Doctrine for Harm" (Document No. 20), and **REMOVE** this matter from the Court's docket.

---

particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . And is not otherwise violative of the Constitution." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994), *cert. denied*, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); *see also Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); *Posey v. Dewalt*, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), *appeal dismissed by*, 215 F.3d 1320 (4th Cir. 2000), *cert. denied*, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). Neither Section 3621(b) nor Section 3624(c) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in a particular security classification. Title 18, U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. *See* 18 U.S.C. § 3621. *See also Trowell v. Beeler*, 135 Fed.Appx. 590, 595 (4th Cir. 2005)(finding that "BOP must exercise its own independent judgment" under Section 3621(b)). The language of Section 3621(b) stating that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility. Furthermore, Title 18 U.S.C. § 3624(c) "does not direct that the BOP must place prisoners in a particular facility, such as a halfway house, to achieve these 'pre-release conditions.' Rather, pursuant to § 3621(b), and subject to the § 3624 limitation periods, the BOP retains discretion to determine whether the pre-release conditions or programs will be provided within a BOP facility or within a community confinement setting." *Bost v. Adams*, 2006 WL 1674485 (S.D.W.Va. Jun 12, 2006)(finding that petitioner "does not possess a statutorily created liberty interest in release to community confinement"); *also see Pennavaria v. Gutierrez*, 2008 WL 619197, * 9 (N.D.W.Va. Mar. 4, 2008)(stating that federal prisoners do not have a protected liberty interest in being placed on home confinement, and the BOP has complete and absolute discretion regarding where a prisoner is to be held in pre-release confinement).

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: August 21, 2018.

_____
Omar J. Aboulhosn
United States Magistrate Judge